Richard Croak, Esq.
*Attorney for Debtor*
314 Great Oaks Boulevard
Albany, New York 12203

Richard Robert
Route 8
Leonardsville, New York 13364

*In Re:  Keith Rackowski*
       Chapter 13 Case No.: 10-61574
       Adversary Proceeding No.: 10-80048

## LETTER-DECISION AND ORDER

This matter is before the Court on the adversary complaint ("Complaint," Adv. No. 1)[1] and Application for Default Judgment ("Application," Adv. No. 11) filed by the debtor, Keith Rackowski ("Debtor"), against Richard Robert ("Robert").  At a March 15, 2011 hearing, with Debtor's counsel present, the Court granted the Application and reserved on the matter of damages.  At an April 5, 2011 hearing on damages, the Court heard the testimony of Debtor, Debtor's wife, Sherry Rackowski ("Sherry"), and Debtor's sister, Charmaine Keller ("Charmaine").  Robert did not appear and was not represented at this hearing.  On May 2, 2011, Debtor filed a Post-Trial Statement (Adv. No. 21).  Having now considered the pleadings, testimony, and governing law, the Court finds and concludes as follows.[2]

The Court has jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b)(1).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

---

[1] Documents filed in the main bankruptcy case are referred to herein as "ECF No. __," while pleadings and documents filed in the adversary proceeding are referred to herein as "Adv. No. __."

[2] This Letter-Decision and Order constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

Debtor filed a voluntary Chapter 13 petition on June 4, 2010. (ECF No. 1.) On Schedule F, titled "Creditors Holding Unsecured Nonpriority Claims," Debtor listed Robert as the holder of a general unsecured non-priority claim in an unknown amount. Robert received notice of Debtor's bankruptcy case from this Court by virtue of the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines" (ECF No. 6), mailed on June 9, 2010 (ECF No. 7). According to Debtor, Robert also received notice of his bankruptcy directly from Debtor's counsel. Notwithstanding Robert's notice of Debtor's bankruptcy, Debtor alleges that Robert continued post-petition to attempt to collect the pre-petition debt provided for under the plan.

On October 1, 2010, Debtor filed the Complaint pursuant to 11 U.S.C. § 362(k)[3] on grounds that Robert made numerous post-petition attempts to collect on the debt. Debtor states therein that he purchased seed corn from Robert pre-petition, he tendered a check to Robert with the understanding that Robert would not cash the check until Debtor advised him that he had sufficient funds in the underlying bank account to draw upon, and Robert tendered the check earlier than agreed and after commencement of this case. The check was dishonored because the bank had been served with a restraining notice prior to Debtor's filing for Chapter 13 relief and, thus, froze the bank account. Debtor asserts that Robert then contacted the New York State Police, who repeatedly threatened Debtor and his family members with prosecution for non-payment of the debt. Debtor specifically alleges at least four separate incidents giving rise to damages under § 362(k), and now seeks actual damages for the emotional distress caused, attorneys' fees, and punitive damages.

On April 5, 2011, the Court heard sworn testimony from Debtor, Sherry, and Charmaine. Debtor testified that he received repeated in person and telephonic threats by officers of the New

---

[3] All further section references herein are to the United States Bankruptcy Code (the "Code"), 11 U.S.C. §§ 101–1532 (2010).

York State Police demanding payment of the debt he owed Robert. Debtor stated that two specific officers came to his farm and home on numerous occasions and that they threatened to arrest him if he did not repay Robert. Because the check tendered by Debtor to Robert was written on a bank account owned by Sherry and Charmaine, these witnesses both testified that they were also harassed and intimidated by the same officers. All three witnesses claim to have been threatened by the officers with arrest and criminal prosecution for passing a bad check. Both women testified that they were told they could be arrested at their respective place of employment, and Sherry indicated she feared that an arrest would lead to the loss of her New York State license as an x-ray technician, while Charmaine testified that she could not afford to lose her job as an independent salesperson. In addition to these general threats, Sherry recounted a specific incident to the Court where one of the officers involved targeted and stopped her vehicle while her youngest son was driving and she was a passenger even though her son was obeying the traffic laws. According to Debtor, his wife, and his sister, the repeated threats and harassment caused Debtor and his immediate family members to suffer substantial emotional distress.

In determining the appropriate amount of damages to award on account of emotional distress, Debtor asks the Court to consider the parties respective positions in the community. Specifically, he emphasizes that he is a small dairy farmer, who is "not sophisticated," and who lives in a small rural community where the New York State Police hold a clear position of authority. Given Debtor's background and surroundings, he argues that it is reasonable for the Court to find, under the circumstances, that he suffered an extraordinary level of anxiety, stress, and emotional injury as a result of the officers' conduct, who acted at Robert's behest. Debtor concedes that not every stay violation will give rise to emotional distress damages, but he

stresses that, in this particular case, he was "placed in a state of fear and severe distress," which justifies such an award. For having to prosecute the stay violation, Debtor also asserts that the Court should grant Debtor's request for costs and reasonable attorneys' fees as part of an award for actual damages. Debtor's counsel has submitted time records with the Post-Trial Statement showing attorneys' fees in the amount of $4,711.05 and costs in the amount of $424.00 incurred in connection with prosecution of the adversary proceeding.

In addition to actual damages, Debtor asks for punitive damages to be awarded in this case. To support an award of punitive damages, Debtor cites to New York Penal Law, section 190.10, N.Y. PENAL LAW § 190.10 (Consol. 2011), and argues that Robert knew or should have known that he did not have a basis for a criminal complaint against Debtor because Debtor did not intend for the check to be dishonored at the time that he gave it to Robert, and the parties agreed that Robert would hold the check indefinitely until Debtor advised Robert that he had sufficient funds in the bank account to draw upon. Debtor argues that punitive damages are necessary in this case because the conduct of the New York State Police, who acted on behalf of or at the command of Robert, was egregious, severe, and done with the specific knowledge that their continued contact and harassment were prohibited by Debtor's bankruptcy filing. Although Debtor attempted through counsel to get Robert and the police officers to cease the stay violation, they did not do so. For this reason, Debtor contends that punitive damages must be awarded to deter future violations and harassment instituted by Robert.

The filing of a petition for relief under the Code automatically stays a variety of acts to collect or otherwise enforce a pre-petition debt. *See* 11 U.S.C. § 362(a). If a creditor violates the automatic stay, the debtor is entitled to recover actual damages, including costs and attorneys' fees, and may, depending on the circumstances, also recover punitive damages. *Id.* § 362(k).

Section 362(k) provides that "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." *Id.* § 362(k)(1). Since an entry of default has already been entered in this adversary proceeding as to Roberts, the Court's determination here is purely one of damages. *See, e.g., Lewis v. 1 Stop Cash, Inc. (In re Lewis)*, 2010 Bankr. LEXIS 2456 (Bankr. N.D. Ala. July 13, 2010) (awarding actual and punitive damages on a default judgment in the § 362 context); *In re Panek*, 402 B.R. 71 (Bankr. D. Mass. 2009) (same); *Rupe v. Providian Nat'l Bank & Presidio, LLC (In re Rupe)*, 2003 Bankr. LEXIS 2193 (Bankr. D.S.C. June 20, 2003) (same).

Having previously addressed the governing law on this issue, the Court reiterates the general standard articulated by the Second Circuit as:

> [A]ny deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages. An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. § 362(h). This standard encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of the automatic stay, and thereby protects debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations.
>
> *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir. 1990) (applying former § 362(h), which has been redesignated as § 362(k) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005). Actual damages are not limited to a debtor's financial loss as a result of the willful stay violation; rather, a debtor may also recover damages for the 'emotional and psychological toll that a violation can exact from an individual.' *Dawson v. Washington Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1148 (9th Cir. 2004); *accord In re Schultz*, 2009 Bankr. LEXIS 2645, *17 (Bankr. N.D.N.Y. Feb. 20, 2009) ('even where no pecuniary loss is shown, a court may nevertheless award actual damages for emotional distress') (citing *In re Ficarra*, Ch. 13 Case No. 00-62714, slip op. at 11 (Bankr. N.D.N.Y. Apr. 17, 2002); *In re Griffin*, 415 B.R. 64 (Bankr. N.D.N.Y. 2009)).

*In re Burkart*, 2010 Bankr. LEXIS 385, *12–13 (Bankr. N.D.N.Y. Feb. 9, 2010).  With respect to a claim for emotional distress damages, the Court further clarified:

> A claim for emotional distress damages is sustainable, however, only upon a showing of 'clear evidence to establish that significant harm occurred as a result of the violation . . . .'  *In re Dawson*, 390 F.3d at 1148.  Emotional distress damages 'must be more than fleeting, inconsequential and medically significant to be compensable.'  *In re Griffin*, 415 B.R. at 68 (*quoting Aiello v. Providian Fin. Corp.*, 257 B.R. 245, 250–51 (N.D. Ill. 2000), *aff'd* 239 F.3d 876, 881 (7th Cir. 2001)) [internal quotation marks omitted].  An individual may establish significant emotional distress damages by presenting corroborating medical evidence, or the Court may justifiably presume the same where, 'for example, the debtor is physically threatened, the violative act constitutes an invasive and personal attack, or a tangible and substantially adverse action results from the stay violation.'  *Id.*

*Id.* at *13–14.  This Court has previously held that "where the circumstances of the violation are patently or obviously egregious, emotional distress damages can be proven and awarded merely by credible debtor testimony alone. *Id*. at *17.

> With respect to a claim for punitive damages, the Court reiterates the set parameters as:
>
> Punitive damages for a willful violation of the automatic stay are warranted only where there is an actual finding of maliciousness or bad faith on the part of the offending creditor.  *Crysen*, 902 F.2d at 1105.  'The primary purposes of an award of punitive damages are punishment and deterrence.'  *Colorado East Bank & Trusts v. McCarthy (In re McCarthy)*, 421 B.R. 550, 568 (Bankr. D. Colo. Nov. 30, 2009) (citing *In re Gagliardi*, 209 B.R. 808, 818 (Bankr. D. Colo. 2003)); *In re Rodion Lukach*, 2007 Bankr. LEXIS 1631, at *17 (Bankr. E.D.N.Y. May 8, 2007).  In deciding whether circumstances exist for an award of punitive damages under § 362(k), courts examine the following factors: (1) the nature of the defendant's conduct; (2) the nature and extent of the harm to the plaintiff; (3) the defendant's ability to pay; (4) the motives of the defendant; and (5) any provocation by the debtor.  *Roche v. Pep Boys, Inc. (In re Roche)*, 361 B.R. 615, 624 (Bankr. N.D. Ga. 2005) (collecting cases); *In re Notabartolo*, Ch. 13 Case No. 03-10777, slip. op. at 6 (Bankr. N.D.N.Y. Feb. 16, 2006) (citations omitted).

Id. at *22.

In the present case, Debtor, Sherry, and Charmaine were all highly credible witnesses.  Debtor testified that Robert and the police officers were advised of his pending Chapter 13 case.

Despite notice of this bankruptcy, the threats made or set in action at Robert's behest were of a very serious nature in that they threatened the liberty of Debtor as well as the liberty and/or employment of his immediate family members, including Debtor's youngest son, and they were made by individuals in a recognized position of authority. Based upon these facts and the testimony taken as a whole in this case, the Court finds that the extreme nature of Robert's continued post-petition efforts to collect on the pre-petition debt, through the enlistment and aid of certain officers of the New York State Police, caused Debtor to suffer significant emotional distress for which he must be compensated. For the distress and worry suffered by Debtor, the Court awards $500.00. The Court further finds that Debtor is entitled to an award of attorneys' fees and costs in this matter, though the Court adjusts and reduces the attorneys' fees portion of the award from the $4,711.05 requested to $3,435.00,[4] together with costs in the amount of $490.05.[5]

---

[4] The following chart compares the amount of time billed by Debtor's counsel in this adversary proceeding to the amount of time the Court deems reasonable and, thus, allows for the allotted tasks:

| Date | Description | Rate | Hours Billed | Hours Allowed |
|---|---|---|---|---|
| 9/30/10 | Meeting with Debtor to discuss attempts by Robert to collect on post-dated check subsequent to the filing of the Chapter 13 petition | $350.00 | 1.50 | 1.0 |
| 9/30/10 | Calls to New York State Police to resolve matter | $350.00 | 1.0 | 1.0 |
| 10/1/10 | Draft Complaint | $350.00 | 3.0 | 1.0 |
| 10/1/10 | Filing and preparing documents | $150.00 | 1.0 | 0 |
| 10/4/10 | Attempts at service | $150.00 | 0.5 | 0.5 |
| 11/12/10 | Completed service of complaint | $150.00 | 1.0 | 0.5 |
| 2/8/11 | Motion for default judgment | $350.00 | 1.5 | 1.0 |
| 3/21/11 | Call to clients regarding evidentiary hearings and latest harassment from creditor | $350.00 | .90 | .90 |
| 3/22/11 | Review of testimony for trial with client | $350.00 | 1.20 | 1.20 |
| 3/25/11 | Appear at hearing for default by phone | $350.00 | 1.30 | 0.5 |
| 3/25/11 | Preparation of pre-hearing statement | $350.00 | 1.80 | 1.0 |
| 4/5/11 | Travel from Albany to Utica for Hearing | Not Billed/50% Rate = $175.00 | 0 | 3.0 |
| 4/5/11 | Attend Hearing | Not Billed/$350.00 | 0 | 1.0 |

Additionally, although the standard for punitive damages is high, considering Robert's repeated collection efforts through the use of the New York State Police, and the severity of the harassment inflicted by the two officers upon Debtor and his immediate family members after being repeatedly informed of Debtor's bankruptcy filing, and in order to deter such conduct in the future, the Court finds that the imposition of punitive damages in the amount of $2,000.00 is warranted in this case.

Accordingly, damages shall be and are hereby awarded against Robert in favor of Debtor in the amount of $4,425.05 for actual damages, including attorneys' fees and costs, and $2,000.00 for punitive damages.

It is SO ORDERED.

Dated at Utica, New York
This 14th day of June 2011

                                                         /s/ Diane Davis_____
                                                        DIANE DAVIS
                                                        United States Bankruptcy Judge

| 4/27/11 | Preparation of Post-Trial Statement | Not Billed/$350.00 | 0 | 1.0 |

[5] While Debtor requested only $424.00 in costs, the submitted time and expense records actually show expenses in the amount of $490.05 as certain expenses were improperly included under the category for "Fees." These include $8.00 for long distance charges incurred on 9/30/10, $15.75 for Federal Express charges incurred on 11/12/10, $37.50 for Court call charges incurred on 3/15/11, and $4.80 for New York State Thruway toll charges incurred on 3/25/11.